# Exhibit A

**Ty Hyderally, Esq. (ID# 023231993)**
**Hyderally & Associates, P.C.**
33 PLYMOUTH STREET, SUITE 202
MONTCLAIR, NEW JERSEY 07042
TELEPHONE (973) 509-8500
FACSIMILE (973) 509-8501
Attorneys for Plaintiff: Gerardo Rios-Lopez

| | |
|---|---|
| GERARDO RIOS-LOPEZ,<br><br>PLAINTIFF,<br><br>VS.<br><br>WAYFAIR, LLC, JOHN DOES 1-10, AND XYZ CORP. 1-10,<br><br>DEFENDANTS. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: MIDDLESEX COUNTY<br>DOCKET NO.:<br><br>CIVIL ACTION<br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiff, Gerardo Rios-Lopez ("Rios-Lopez" or "Plaintiff"), who resides at 263 Matilda Avenue, Apt. 139, Somerset, NJ 08873, by way of this Complaint against Defendants, Wayfair, LLC ("Wayfair"), John Does 1-10, and XYZ Corp. 1-10 (hereinafter collectively "Defendants"), hereby says:

### I.  Nature of Action, Jurisdiction, and Venue

1. This is an action seeking equitable and legal relief for: (1) a violation of the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et seq.* ("LAD") (disability discrimination); and (2) a violation of the LAD (retaliation).

2. This court has jurisdiction due to the nature of the action and the amount in controversy. Additionally, Plaintiff has satisfied all prerequisites to bringing these claims.

3. Venue is appropriate in this court since Plaintiff worked in Middlesex County, Defendants have an office and do business in Middlesex County, and some of the causes of action accrued in Middlesex County.

### II.     Parties

4. Rios-Lopez worked for Wayfair as a forklift operator from November 11, 2018, until his unlawful termination on April 15, 2021.

5. On information and belief, Wayfair is a for-profit Delaware limited liability company engaged in e-commerce, with United States company headquarters located at 4 Copley Place, Floor 7, Boston, Massachusetts 02116.

6. Rios-Lopez worked at Wayfair's Cranbury warehouse, located at 48 Station Road, Cranbury, New Jersey 08512.

7. Defendants employed Rios-Lopez to perform work-related duties in the State of New Jersey.

8. During the relevant time period, JOHN DOES 1-10 are currently unknown employees who were either senior management-level employees who controlled Plaintiff's workplace, and supervised Plaintiff and aided and/or abetted in the commission of conduct complained of herein and/or who either acted within the scope of their employment at the workplace during working hours, or, to the extent they went beyond the scope of their employment, Defendants ratified, embraced and added to their conduct. As the parties engage in discovery, Plaintiff retains the right to amend the Complaint to add these individual employees by name.

9. During the relevant time period, XYZ Corps. 1-10 are unknown affiliated corporations or entities or other corporations who have liability for the claims set forth herein. As the parties engage in discovery, Plaintiff retains the right to amend the Complaint to add these individual entities by name.

10. At all times referred to in this complaint, employees of the Corporate Defendant(s), who are referred to herein, were acting within the scope of their employment at the workplace during working hours or the Corporate Defendant(s) ratified, embraced and added to their conduct to the extent that their actions went beyond the scope of their employment.

11. Thus, all Defendants are subject to suit under the statutes alleged above.

### III. Factual Allegations

12. Rios-Lopez began working for Wayfair on November 11, 2018.

13. Rios-Lopez earned $16.50 an hour and worked the second shift, from 3:30 p.m. to 12:00 a.m., Monday through Friday.

14. After approximately six months Rios-Lopez requested to be moved to the first shift, to accommodate his children's school schedule, and began working from 6:00 a.m. to 4:30 p.m., Sunday through Wednesday.

15. When Rios-Lopez switched to the first shift, his pay was reduced, to $16.00 an hour.

16. In June of 2020, Rios-Lopez received a raise, to $21.50 an hour.

17. Throughout his employment, Rios-Lopez performed his duties in an exemplary manner and received no discipline.

18. Rios-Lopez reported to Que (lnu), his supervisor.

19. On or about April 9, 2021, a coworker with whom Rios-Lopez had recently been in close contact called to tell him that the coworker tested positive for COVID-19.

20. Rios-Lopez had no symptoms of COVID-19 and felt fine.

21. However, as a precaution and as recommended by state and CDC guidelines, on April 9, 2021 at 5:00 p.m., Rios-Lopez underwent a test for COVID-19 at a testing site in New Brunswick, New Jersey.

22. On April 10, 2021, Rios-Lopez received a negative test result. (Exhibit 1).

23. Throughout April 10 and 11, 2021, and into the early morning of April 12, 2021, Rios-Lopez continued to feel well and not experience any COVID-19 symptoms.

24. Thus, Rios-Lopez worked his normal shift of 6:00 a.m. to 4:30 p.m. on April 10, 2021 and April 11, 2021, and arrived at work at 6:00 a.m. on April 12, 2021 to start his shift.

25. Rios-Lopez continued to feel fine until shortly after he started his shift on April 12, 2021, when during the morning meeting he began to get a headache and feel unwell.

26. Rios-Lopez immediately went to Que and told Que that he had suddenly started to feel ill.

27. Que then told Rios-Lopez to separate himself from the group of employees who were at the meeting.

28. At about 6:40 a.m. Que approved Rios-Lopez to leave work early because he was not feeling well and told Rios-Lopez to get re-tested for COVID-19.

29. Rios-Lopez left work and underwent a second COVID-19 test.

30. Rios-Lopez was tested on April 12, 2021, at 1:15 p.m., and on April 14, 2021, received a positive test result. (Exhibit 2).

31. Rios-Lopez sent the test result via e-mail to his supervisor, Que as well as Mohammed (lnu), who oversees all work groups, and Linda Herzstein, in the Human Resources department.

32. After receiving notification that Rios-Lopez was disabled with COVID-19, Defendants then terminated him due to his disability.

33. Rios-Lopez complained that it was completely unfair that he was terminated because he had COVID.

34. He noted that as soon as he knew that he had COVID, he informed Defendants and started his disability leave.

35. Defendants refused to relent and instead maintained their termination of him.

36. At the time of his termination, Rios-Lopez was earning $21.50 an hour and received medical insurance, dental insurance, vision insurance, participated in a 401K plan, was offered stock options, and accrued paid time off at the rate of three hours and fifteen minutes bi-weekly.

37. These benefits of employment make up Plaintiff's claim for damages.

### Count I
### (New Jersey Law Against Discrimination)
### (Disability Discrimination)

38. Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.

39. The foregoing facts and circumstances demonstrate that Defendants have violated the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et seq.,* by discriminating against Plaintiff due to Plaintiff's handicap and/or disability.

40. As a direct and proximate result of the actions of Defendants, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional distress injuries, the physical manifestation of emotional distress injuries, and/or physical injury. Furthermore, Plaintiff has suffered lost wages, a diminished ability to earn a living, and a diminished capacity to enjoy Plaintiff's life. Moreover, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care. Plaintiff's damages have been experienced in the past, and they will continue into the future.

41. Further, Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

### Count II
### (New Jersey Law Against Discrimination)
### (Retaliation)

42. Plaintiff realleges and incorporates herein the paragraphs set forth in this Complaint.

43. The foregoing facts and circumstances demonstrate that Defendants have violated the New Jersey Law Against Discrimination, N.J.S.A. 10:5-1 *et seq.,* by retaliating against Plaintiff

     for engaging in the protected activity of taking disability leave and/or medical leave and/or requesting reasonable accommodations due to the medical/disability leave and/or notifying Defendants that he suffered from a disability/medical condition.

44. As a direct and proximate result of the actions of Defendants, Plaintiff has suffered mental anguish, physical discomfort, pain and suffering, shame and embarrassment, emotional distress injuries, the physical manifestation of emotional distress injuries and/or physical injury. Furthermore, Plaintiff has suffered lost wages, a diminished ability to earn a living, and a diminished capacity to enjoy Plaintiff's life. Moreover, Plaintiff has and/or may have to incur expenses for medical, psychiatric, and/or psychological counseling and care. Plaintiff's damages have been experienced in the past, and they will continue into the future.

45. Further, Plaintiff has been required to retain an attorney to assist Plaintiff in asserting Plaintiff's claims and protecting Plaintiff's rights.

**WHEREFORE**, as to each and every count, Plaintiff demands judgment on each and all of these Counts against the Defendants jointly and severally, as follows:

    A. Compensatory damages of not less than $250,000;

    B. Damages for lost wages and benefits, back pay, front pay (or reinstatement);

    C. Damages for humiliation, mental and emotional distress;

    D. Statutory damages, if applicable;

    E. Punitive damages and or liquidated damages where permitted by law;

    F. Attorneys' fees and costs of suit;

    G. Lawful interest - including pre-judgment interest on lost wages;

    H. Lawful interest - including pre-judgment interest on any wages not paid in a timely manner; and

    I. Such other, further and different relief as the Court deems fitting, just and proper.

Plaintiff hereby reserves the right to amend this Complaint to supplement or modify the factual obligations and claims contained herein, based upon information received from the defendants, witnesses, experts, and others in the course of discovery in this matter.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 4:35-1(a) and (b), plaintiff respectfully demands a trial by jury on all issues in the within action so triable.

## DESIGNATION OF TRIAL COUNSEL

In accordance with Rule 4:25-4, TY HYDERALLY is hereby designated as trial counsel on behalf of plaintiff.

## R. 4:5-1(b)(2) CERTIFICATION OF NO OTHER ACTIONS OR PARTIES

I hereby certify that the matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, that no other action or arbitration proceeding is contemplated, and that there are no other parties known to me at this time who should be joined as parties to this action.

## DEMAND FOR PRODUCTION OF INSURANCE AGREEMENTS

Pursuant to R. 4:10-2(b), demand is hereby made that you disclose to the undersigned whether there are any insurance agreements or policies under which any person or firm carrying on an insurance business may be liable to satisfy all or part of a judgment which may be entered in the action or to indemnify or reimburse for payment made to satisfy the judgment.

If so, please attach a copy of each, or in the alternative state, under oath and certification: (A) policy number; (b) name and address of insurer; (c) inception and expiration date; (d) names and addresses of all persons insured thereunder; (e) personal injury limits; (f) property damage limits; and (g) medical payment limits.

DATED:		April 13, 2022

                     **HYDERALLY & ASSOCIATES, P.C.**
                     *Attorneys for Plaintiff*

                 **By:** _____
                     **TY HYDERALLY, ESQ.**
                     **For the Firm**

T:\Rios Lopez Gerardo\Pleadings\041322.COM.doc